THEODORE BLANK AND WIFE, complainants-appellants,

*v.*

BOROUGH OF HADDONFIELD, defendant-respondent.

[Submitted June 19th, 1924. Decided October 20th, 1924.]

The existence and extent of a dedication on a map from which lots are sold is a question of intent, consisting of mixed law and fact, and where a municipality attempted to accept such dedication by ordinance, but prior thereto had filled in across a lake shown on the map and installed a sewer thereon, such acts completely frustrated and made impossible of accomplishment the dedication of the lake shown on the map, and, therefore, such attempted dedication fails.

---

On appeal from a decree in the court of chancery.

*Mr. Lewis Starr,* for the appellants.

*Mr. Patrick H. Harding,* for the respondent.

The opinion of the court was delivered by

CAMPBELL, J.

This is an appeal from a decree advised by Vice-Chancellor Ingersoll, dismissing a bill of complaint in an action to quiet title to lands of appellants.

In 1893 the Haddonfield Land Company became the owner of a tract of land known as the Redmond Farm, and caused the same to be mapped, such map being entitled "plan of the property of West Haddonfield Heights Land Company, filed August 18th, 1893, by Jacob Sickler, Register."

On such map appears a rectangular area extending from Mount Vernon avenue to Elm avenue, in which is outlined an area marked "Lake Haddon," surrounding which are irregular passageways and illustrations intended to represent trees.

The property of appellant is fifty feet by one hundred and seventy-five feet, lying in the southeast corner of this Lake Haddon tract.

The contention is that the map was prepared by a surveyor, and the marking thereon of the rectangular plot with "Lake Haddon" therein was made by him without the authority or knowledge of the owner, the West Haddonfield Land Company; that upon discovering this, in February, 1894, the land company determined to secure releases from all persons to whom it had sold lots, and to destroy all old maps and secure new ones.

Quit-claim deeds, or waivers, were obtained from all purchasers except two, and on December 20th, 1897, a new map was prepared and filed. This new map is quite similar to the old one except "Lake Haddon" is not shown thereon, and the rectangular area in which it was shown on the old map is plotted and divided into lots. Up until 1922 all the lands included in the rectangular tract and "Lake Haddon" were assessed for taxes by the borough.

The question of the existence and extent of dedication has always been treated as one of intent, consisting of mixed law and fact. *Wood* v. *Hurd, 34 N. J. Law 87; Central Railroad Co.* v. *State, 32 N. J. Law 220.*

It might well have been found that the facts did not indicate and establish an intent to dedicate, but we need not disturb this finding of fact in the court below.

We find that the decree below dismissing the bill of complaint must be reversed for another reason.

On January 25th, 1922, the borough of Haddonfield, by ordinance, attempted to accept the alleged dedication of the Lake Haddon tract.

Prior thereto the borough had filled in across the lake tract Estaugh avenue and had installed therein a sewer to connect with lots 503 and 504, north of said tract, and owned by the borough, and upon which was erected a sewage pumping station.

There can be no question but what if there was an intent on the part of the land company to dedicate, that intent was to dedicate a public lake.

That intent and purpose was completely frustrated and made impossible of accomplishment by the filing in of Estaugh avenue and the construction of the sewer across the lake tract prior to the attempted acceptance by the borough.

Therefore, that which was tendered as a dedication did not exist at the time of acceptance, namely, Lake Haddon. An abandonment occurs where the use for which the property is dedicated becomes impossible of execution, or where the object of the use for which the property is dedicated wholly fails. *18 Corp. Jur. 123 § 160,* and cases thereunder cited.

The dedication, if one there was, therefore failed, and the decree below is reversed, with costs.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, GARDNER, VAN BUSKIRK, CLARK, MCGLENNON, KAYS—15.